UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CRAIG MURRAY BELKNAP,

Petitioner,

v.

CONSTANCE REESE, Warden,

Respondent.

Civil No. 01-218 (RHK/SRN)

**REPORT AND RECOMMENDATION**

Craig Murray Belknap, Federal Medical Center, Rochester, Minnesota, 55903-4000, Petitioner, pro se.

Rachel K. Paulose, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Respondent.[1]

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Craig Murray Belknap for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent has filed a return, (Docket Nos. 9 and 10), contending that the petition should be denied. The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court will recommend that Petitioner's habeas corpus petition be dismissed.

[1] Although Petitioner has named "The United States" as the respondent in this matter, counsel for the United States has correctly pointed out that the proper respondent in a habeas corpus proceeding is the warden at the institution where the Petitioner is confined. Because Petitioner is currently confined at the Federal Medical Center in Rochester, Minnesota, the warden at that institution, Constance Reese, will henceforth be the named respondent in this action.

FILED OCT 01 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND

On December 1, 1995, Petitioner was convicted in the U.S. District Court for the District of Oregon on five charges involving the illegal purchase and possession of firearms.[2] He was sentenced to a total of 71 months in federal prison.

In 1998, Petitioner was assigned to the Medical Center for Federal Prisoners in Springfield, Missouri, ("MCFP-Springfield"), for a mental health examination. In February 2000, a "Risk Assessment Panel" was convened at MCFP-Springfield, to determine whether Petitioner should be civilly committed upon the expiration of his federal prison sentence. It was the unanimous opinion of the Risk Assessment Panel that Petitioner "continues to suffer from a severe mental disorder, and his mental illness is inextricably linked to his criminal behavior." ("Risk Assessment Review Report," dated February 7, 2000, included at "Exhibit B" of the Declaration of Mary A. Benning, ("Attorney-Advisor for the Combined Litigation Center for Minnesota"), [Docket No. 10].) Finding that Petitioner

---

[2] Respondent's return shows that Petitioner's convictions stemmed from an incident that occurred at an Oregon shopping mall on September 23, 1993. After a physical struggle, Petitioner was apprehended and found to be carrying a "loaded and fully cocked .22 caliber Derringer," a "fully loaded Taurus 9mm semi-automatic pistol," a "fully loaded Colt 357 magnum revolver," a "fully loaded Rossi 38 caliber revolver," a "bulletproof vest, brass knuckles, 360 rounds of 9mm caliber ammunition, 100 rounds of .357 caliber ammunition, two speed loaders loaded with .38 caliber ammunition and a large knife." An FBI task force later found additional items in Petitioner's home, including "a Remington shotgun, two Mossburg shotguns, two Chinese SKS assault rifles, one Glock 10mm pistol, one AMP .380 pistol, approximately 850 shotgun shells, 78 rounds of .357 caliber ammunition, 270 rounds of SKS ammunition, 3,310 rounds of 7.62 caliber ammunition, and 45 rounds of .38 caliber ammunition," as well as "racist and antisemitic paraphernalia." Additional weapons (an assault rifle and another semi automatic pistol) and additional ammunition were later found in a storage unit rented by Petitioner. (See "Risk Assessment Review Report," dated February 7, 2000, included at "Exhibit B" of the Declaration of Mary A. Benning, ("Attorney-Advisor for the Combined Litigation Center for Minnesota"), [Docket No. 10].)

"would be likely to pose a risk to the community at large because of his predilection for firearms and acquisition of assault weapons and other firearms," the Risk Assessment Panel concluded that Petitioner "would present a substantial risk to others or to property of others due to his mental illness." (Id.)

Based on the opinions and conclusions of the Risk Assessment Panel, the United States Attorney for the Western District of Missouri filed a petition seeking to have Petitioner civilly committed pursuant to 18 U.S.C. § 4246. That statute authorizes federal district courts to order that a federal prisoner be held in custody following the expiration of his federal prison sentence, if it appears, by clear and convincing evidence, that the prisoner "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another."[3] The § 4246 petition papers were filed in Petitioner's case in

---

[3] The commitment provisions of § 4246 are as follows:

"**(a) Institution of proceeding.**--If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined. The clerk shall send a copy of the certificate to the person, and to the attorney for the Government, and, if the person was committed pursuant to section 4241(d), to the clerk of the court that ordered the commitment. The court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another. A certificate filed under this subsection shall stay the release of the person

March 2000.

Petitioner finished serving his 71-month sentence on June 27, 2000, but he was not released from prison on that date. Instead, the federal Bureau of Prisons continued to detain him at MCFP-Springfield, presumably because of the still pending § 4246

---

pending completion of procedures contained in this section.

**(b) Psychiatric or psychological examination and report.**--Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

**(c) Hearing.**--The hearing shall be conducted pursuant to the provisions of section 4247(d).

**(d) Determination and disposition.**--If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General. The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment. The Attorney General shall make all reasonable efforts to cause such a State to assume such responsibility. If, notwithstanding such efforts, neither such State will assume such responsibility, the Attorney General shall hospitalize the person for treatment in a suitable facility, until--

**(1)** such a State will assume such responsibility; or

**(2)** the person's mental condition is such that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would not create a substantial risk of bodily injury to another person or serious damage to property of another;

whichever is earlier. The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment."

commitment petition that had been filed against him.

On October 9, 2000, Petitioner completed and signed his current application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. As of that date, no final order had yet been entered on the § 4246 commitment petition. For reasons that are not readily apparent, Petitioner filed his current petition in the Eastern District of Washington, even though he was, at the time, still being held at MCFP-Springfield.[4]

Petitioner alleges in his four-page handwritten habeas petition, (Docket No. 1), that he should be released from custody because his prison sentence has been fully served. He further alleges that prison officials at MCFP-Springfield continued to detain him because (1) they were upset with him for doing "a lot of legal work," (2) they were worried that he might be able to furnish evidence regarding assaults committed against other prisoners, and (3) they were attempting to "cover up their official criminal wrongdoing," which allegedly included the improper administration of "a powerful drug called Haldol" that purportedly "lobotomized" Petitioner's brain. (Petition, [Docket No. 1], pp. 2-3.) The petition seeks a writ of habeas corpus that would release Petitioner from his allegedly unlawful post-sentence detention.

Petitioner's habeas corpus petition was received and filed on October 26, 2000. On October 27, 2000, a commitment order was entered in the Western District of Missouri in Petitioner's § 4246 commitment proceedings. The District Court Judge accepted the evidence which indicated that Petitioner "suffers from a mental disease or defect and his

---

[4] Petitioner evidently lived in Washington for a while, and had some prior experience with the federal courts in that state. It is unclear, however, why he thought the Eastern District of Washington might be an appropriate venue for his present habeas petition.

release [from custody] would pose a substantial risk of dangerousness," and Petitioner was therefore "committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246."[5] Petitioner is still in federal custody pursuant to the commitment order of October 27, 2000, and there apparently is no reason to believe that he will be released any time soon.

On November 2, 2000, the Eastern District of Washington ordered that the instant habeas corpus petition be transferred to the district in which Petitioner was then confined, namely the Western District of Missouri. A few weeks later, however, Petitioner was moved from MCFP-Springfield to the Federal Medical Center in Rochester, Minnesota, ("FMC-Rochester"). Therefore, by order dated January 9, 2001, the case was transferred once again, this time from the Western District of Missouri to the District of Minnesota. (Docket No. 4.) The file arrived in our District on February 5, 2001. Thereafter, Respondent was ordered to file a return to the petition, and Respondent has now done so.

Since Respondent's return was filed, Petitioner has filed several additional documents with the Court. Many of Petitioner's more recent submissions are simply requests for information about the status of his case. (See Docket Nos. 12, 16, and 17.) In some of his recent submissions, however, Petitioner seems to be trying to supplement his original habeas petition by adding new claims and arguments. (See Docket Nos. 11, 14, 15, and 18.) Although much of Petitioner's supplemental material is simply a reiteration of his original habeas claims, the Court has been able to identify two new sets

---

[5] A copy of the commitment order is included in Exhibit B, attached to the Declaration of Mary A. Benning. (Docket No. 10.)

of claims in Petitioner's post-petition submissions. First, he now contends that he is entitled to a writ of habeas corpus because of errors that allegedly occurred during the § 4246 proceedings that resulted in the commitment order of October 27, 2000. (It will be recalled that the commitment proceedings were still pending, and no commitment order had yet been entered, when Petitioner prepared his original habeas petition, so he obviously was not challenging the commitment order itself in his original petition.) And second, he now contends there is "new evidence" showing that his mental health has improved so much that the commitment order should now be vacated.

Thus, the Court finds that there are three separate and distinct sets of claims that must be considered here:

> (1) the claims raised in the original petition, challenging the validity of Petitioner's custody during the period after the expiration of his prison sentence on June 27, 2000, and before the entry of the commitment order on October 27, 2000;
>
> (2) the claims challenging the legality of the commitment order of October 27, 2000, and, concomitantly, the legality of Petitioner's ongoing confinement pursuant to that order; and
>
> (3) the claims based on "new evidence" showing that regardless of the validity of the original commitment order, that order should now be set aside, because Petitioner no longer suffers from a mental disease or defect that causes him to pose a danger to others.

For the reason discussed below, the Court concludes that none of these three sets of claims can properly be adjudicated on the merits here. It will therefore be recommended

that Petitioner's application for habeas corpus relief be dismissed.

## II. DISCUSSION

### A. Claims Raised In The Original Habeas Petition

The claims raised in Petitioner's original habeas corpus petition cannot be viewed as a challenge to the § 4246 commitment order, because that order was not entered until after his petition was filed. The original petition could not have challenged the legality of Petitioner's current civil commitment, because the order causing such commitment had not yet been entered. Instead, the original petition could (and did) challenge only the federal government's legal authority to detain Petitioner after his federal prison sentence had been fully served, and before the civil commitment order was entered. In his original petition, Petitioner argued that prison officials at MCFP-Springfield had no legal authority to detain him after his prison sentence was over, and that they were doing so for inadequate and improper reasons – i.e., because they did not like his legal work, they did not want him to provide evidence concerning assaults on inmates, and they did not want him to disclose any information about the medication (Haldol) that had been given to him.

The claims raised in Petitioner's original habeas petition will not be addressed on the merits here, because those claims have been rendered moot by the commitment order of October 27, 2000. Any questions regarding the BOP's legal authority to detain Petitioner following the expiration of his prison sentence have been effectively resolved by the entry of the commitment order. Because Petitioner is now being held pursuant to the commitment order, his habeas challenges to his pre-commitment order confinement are moot.

Petitioner's pre-commitment order claims are indistinguishable from the claims of

a pre-trial detainee who is later convicted and sentenced. When an inmate challenges his pre-trial detention in a habeas corpus proceeding, a subsequent conviction and sentence will render his habeas petition moot. Fassler v. United States, 858 F.2d 1016, 1018 (5th Cir. 1988) (per curiam), cert. denied, 490 U.S. 1099 (1989); Powers v. Schwartz, 587 F.2d 783, 783-84 (5th Cir. 1979) (per curiam); Kotmair v. United States, 143 F.Supp.2d 532, 533-35 (E.D.N.C. 2001); Powell v. Galletta, No. 92 CV 3882 (FB) (E.D.N.Y. 1995) 1995 WL 432568 at *1. The same principle is applicable here. Given that Petitioner is now being confined pursuant to the commitment order of October 27, 2000, the legal rationale and the legal authority for his confinement before that date are no longer at issue. Because Petitioner is now being detained pursuant to the § 4246 commitment order, his habeas challenges to his pre-commitment confinement are now moot.[6]

B. Challenge To Commitment Order

To the extent that Petitioner is attempting to challenge the commitment order of October 27, 2000, his claims will not be entertained here, because they have been

---

[6] Although the legality of Petitioner's pre-commitment order confinement is now moot, it should be pointed out that such confinement was not only legal, but in fact required, under 18 U.S.C. § 4246(a). The final sentence of that statute provides that "[a] certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section." In Petitioner's case, a certificate in support of his commitment was filed on or about March 28, 2000 – nearly three months before Petitioner's prison sentence expired. Because that certificate was pending when Petitioner reached the end of his prison term, the final sentence of § 4246(a) required prison authorities to "stay the release" of Petitioner until the commitment procedures were completed. Indeed, the commitment order itself expressly noted that "the certification required by § 4246 was filed prior to the expiration of [Petitioner's] sentence [and] [t]his effectively stayed the expiration of the sentence." (A copy of the commitment order is included in Exhibit B, attached to the Declaration of Mary A. Benning; [Docket No. 10].) Thus, it is clear that Petitioner was properly held in custody during the period of time after his sentence expired and before the commitment order was entered.

procedurally defaulted. It is well-settled that "the writ of habeas corpus will not be allowed to do service for an appeal." Sunal v. Large, 332 U.S. 174, 178 (1947). "Because habeas relief is an extraordinary remedy which 'will not be allowed to do service for an appeal,' significant barriers exist in the path of a petitioner who seeks to raise an argument collaterally which he failed to raise on direct review." United States v. Moss, 252 F.3d 993, 1001 (8th Cir. 2001). More specifically, "[t]he failure to appeal [an] issue is... a procedural default that bars collateral relief, absent cause and prejudice." United States v. Nelson, 109 F.3d 1323, 1325, n. 2 (8th Cir. 1997). As explained by the U.S. Supreme Court, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,'... or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted).

In this case, Petitioner did not file a direct appeal challenging his § 4246 commitment order. Because it is now too late for him to do that, (see Fed. R. App. P. 4), all claims pertaining to the commitment proceedings have been procedurally defaulted. As a result, no such claims can be entertained in a habeas action such as this one, unless Petitioner is able to overcome his procedural default by showing cause and prejudice, or proof of actual innocence. Bousley, supra.

Although Petitioner has not made any specific effort to overcome his procedural default, he has alleged that the Eighth Circuit Court of Appeals "refused to let [him] appeal the civil commitment." ("Petitioner's Response To 'Government's Response [etc.],'" [Docket No. 11], p. 7.) This could be viewed as an attempt to satisfy the "cause" half of the cause and prejudice requirement, but it will not suffice. Petitioner's assertion that the Court

of Appeals refused to let him appeal does not satisfy the cause and prejudice requirement because it is merely conclusory. Petitioner has offered no evidence suggesting that he actually did try to appeal, nor has he offered any evidence showing how, specifically, the Court of Appeals responded to his alleged effort to appeal. Because Petitioner has not explained or substantiated his alleged inability to appeal his commitment order, the Court finds that he has not shown sufficient cause to overcome his procedural default.[7]

The Court further finds that Petitioner cannot satisfy the "actual innocence" requirement for overcoming his procedural default. He has challenged several aspects of the process that resulted in the § 4246 commitment order,[8] but he has offered no evidence demonstrating that the legal conclusion reached at the end of that process was erroneous. In other words, he has failed to show that, in truth, he was not suffering from a mental disease or defect that caused him to pose a substantial risk of harm to others.

In sum, all of Petitioner's present challenges to the § 4246 commitment order of October 27, 2000, have been procedurally defaulted, because they were not raised by direct appeal. Because Petitioner is unable to overcome his procedural default, he cannot seek collateral review of that commitment order in the present habeas corpus proceeding.

---

[7] Because Petitioner has failed to satisfy the cause component of the cause and prejudice requirement, it is unnecessary to consider whether he could satisfy the prejudice component. Ashker v. Class, 152 F.3d 863, 871 (8th Cir. 1998) (when petitioner "has not shown adequate cause to overcome the procedural bar... we need not consider the issue of actual prejudice"); Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998) (same).

[8] Petitioner claims, for example, that the commitment proceedings were initiated by a Risk Assessment Panel that was "illegally-empanelled [sic]." ("Request For A Status Report; And Request For An Order Granting The Habeas Corpus Relief The Petitioner Seeks," [Docket No. 14], pp. 3-4.)

C. Claims Based On Events Occurring After Entry Of The Commitment Order

Some of Petitioner's more recent submissions suggest that he is seeking to have the § 4246 commitment order vacated based on circumstances that have developed since that order was entered. He contends that since his arrival at FMC-Rochester in November 2000 --

> "I have begun to function at a much higher level, and I work very hard at a job. I get very high marks and compliments from my superiors. By the standard set by my (A) Treatment Team, and (B) Unit Team and (C) 'Risk Assessment Panel' at USMCFP-Springfield, I should and must be released from prison...."

("Memorandum: (A) Important Newly-Discovered Information [etc.]," [Docket No. 15], p. 4.) Referring to various psychiatrists and psychologists, who apparently work at FMC-Rochester, Petitioner says that "[a]ll of these expert professionals agree that I am not a threat to society and that I should be released from prison as soon as possible." (Id. at p. 5.)

The § 4246 commitment order entered in Petitioner's case authorizes an indefinite commitment, but not a permanent commitment. The federal commitment laws include specific provisions that allow commitment orders to be reviewed when the status or condition of the committed person has changed. Review of a commitment order can be requested either by "the director of the facility in which a [committed] person is hospitalized, (18 U.S.C. § 4246(e)[9]), or by "counsel for the person or his legal guardian," (18 U.S.C. §

---

[9] 18 U.S.C. § 4246(e) provides as follows:

> **(e) Discharge.**--When the director of the facility in which a person is hospitalized pursuant to subsection (d) determines that the person has recovered from his mental disease or defect to such an extent that his release would no longer create a substantial risk of bodily injury to another

4247(h)[10]). Regardless of how a request for review originates, however, such requests

---

person or serious damage to property of another, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. The clerk shall send a copy of the certificate to the person's counsel and to the attorney for the Government. The court shall order the discharge of the person or, on the motion of the attorney for the Government or on its own motion, shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine whether he should be released. If, after the hearing, the court finds by a preponderance of the evidence that the person has recovered from his mental disease or defect to such an extent that--

**(1)** his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall order that he be immediately discharged; or

**(2)** his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall--

**(A)** order that he be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, that has been certified to the court as appropriate by the director of the facility in which he is committed, and that has been found by the court to be appropriate; and

**(B)** order, as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment.

The court at any time may, after a hearing employing the same criteria, modify or eliminate the regimen of medical, psychiatric, or psychological care or treatment.

must be presented to "the court that ordered the commitment." In this case, therefore, if there has been a change in Petitioner's condition that calls for an updated review of his § 4246 commitment, such review will have to be conducted in the court that committed him – i.e., the Western District of Missouri.

If, as Petitioner alleges, the health care professionals at FMC-Rochester now believe that he should be released from his commitment, then a certificate to that effect should be filed in the Western District of Missouri, pursuant to § 4246(e). In the alternative, Petitioner's attorney or legal guardian can file a motion on his behalf, (again in the Western District of Missouri), seeking to have him discharged from his commitment pursuant to § 4247(h). In any event, it is clear that any "new evidence" that might entitle Petitioner to be discharged from the Attorney General's custody must be presented to the court that committed him in the first place.

## III. CONCLUSION

For the reasons discussed above, the Court finds that Petitioner is not presently entitled to a writ of habeas corpus. The claims raised in his original petition, challenging

---

[10] 18 U.S.C. § 4247(h) provides as follows:

> **(h) Discharge.**--Regardless of whether the director of the facility in which a person is hospitalized has filed a certificate pursuant to the provisions of subsection (e) of section 4241, 4244, 4245, or 4246, or subsection (f) of section 4243, counsel for the person or his legal guardian may, at any time during such person's hospitalization, file with the court that ordered the commitment a motion for a hearing to determine whether the person should be discharged from such facility, but no such motion may be filed within one hundred and eighty days of a court determination that the person should continue to be hospitalized. A copy of the motion shall be sent to the director of the facility in which the person is hospitalized and to the attorney for the Government.

the legality of his confinement following the expiration of his prison sentence and before the entry of the § 4246 commitment order, have been rendered moot by the subsequent entry of the commitment order. To the extent that he is challenging the legality of the proceedings that resulted in his current commitment, his claims have been procedurally defaulted, because he did not raise them in a direct appeal. Finally, any "new evidence" showing that Petitioner should now be released from custody must be presented to the court that committed him, namely the Western District of Missouri.

Because none of Petitioner's current habeas claims can properly be entertained here, the Court will recommend that his petition be dismissed. It will be further recommended, however, that the petition be dismissed without prejudice to any proceedings that may hereafter be brought under § 4246(e) or § 4247(h).

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

Petitioner's application for habeas corpus relief under 28 U.S.C. § 2241, (Docket No. 1), be DISMISSED, without prejudice to any proceedings that may hereafter be brought under § 4246(e) or § 4247(h).

Dated: October 1, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served

with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.